IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| AMERICAN BOARD OF INTERNAL MEDICINE, ET AL., <br><br> Plaintiffs, <br> Counterclaim and Third-Party Defendants <br><br> v. <br><br> JAIME A. SALAS RUSHFORD, M.D., <br><br> Defendant, <br> Counterclaim and Third-Party Plaintiff | CIV. NO.: 19-1943 (SCC) |

**OPINION AND ORDER**

On September 22, 2015, Dr. Jaime A. Salas-Rushford ("Dr. Salas-Rushford") filed a Counterclaim and Third-Party Complaint ("CTPC") against the American Board of Internal Medicine ("ABIM") and Richard J. Baron, M.D. ("Dr. Baron"), Christine K. Cassel, M.D. ("Dr. Cassel"), Lynn O. Langdon, M.S. ("Ms. Langdon"), Eric S. Holmboe, M.D. ("Dr.

Holmboe"), David L. Coleman, M.D. ("Dr. Coleman"), Joan
M. Von Feldt, M.D. ("Dr. Von Feldt"), and Naomi P. O'Grady
("Dr. O'Grady"), (collectively, the "ABIM Individuals") due
to the purported damages that he suffered in connection with
certain actions allegedly taken against him by the ABIM
Parties.[1] *See* Docket No. 33.[2] The CTPC initially set forth six
causes of action, however, at this time, only four out of the six
remain, namely: breach of contract under Puerto Rico law,
Lanham Act claim under 15 U.S.C. § 1125(a), and two claims
under Puerto Rico's general tort statute.[3] *Id.*

---

[1] When referring to both ABIM and the ABIM Individuals the Court will
use the term "ABIM Parties".

[2] Throughout this Opinion and Order, the Court will refer to the parties
by name, in order to reduce the possibilities of confusing "who is who"
and "who argued what" in view of the lengthy and tangled procedural
and factual history of this case.

[3] A "general contracts" claim, identified as the "Sixth Claim for Relief" in
the CPTC, against Pearson Education Inc., was dismissed without
prejudice. *See* Docket No. 133. And, during the Hearing held on November
17, 2020 before this Court, Counsel for Dr. Salas-Rushford confirmed that
the copyright claim against the 2,800 doctors, identified as the "Fifth Claim
for Relief" in the CPTC, had not and would not be pursued.

Pending before the Court is the ABIM Parties' Motion for Judgment on the Pleadings ("Motion for Judgment") under Fed.R.Civ.P. 12(c) ("Rule 12(c)"). *See* Docket No. 216. Dr. Salas-Rushford opposed the same. *See* Docket No. 217. And a timely Reply from the ABIM Parties followed. *See* Docket No. 219. On November 17, 2020, a hearing (the "Hearing") was held via Video Teleconference whereby the ABIM Parties and Dr. Salas-Rushford were given the opportunity to discuss their respective positions regarding the Motion for Judgment before the Court.

In view of the advanced discovery stage in which this case stands, coupled with the fact that Dr. Salas-Rushford attached to his Opposition—and made copious references to—several discovery related documents, including deposition extracts and expert reports, at the beginning of the Hearing, the Court inquired as to whether the ABIM Parties wished to convert their Rule 12(c) motion into a motion for summary judgment under Fed.R.Civ.P. 56 ("Rule 56"). Counsel for the ABIM Parties sustained there was no need for such conversion, for

Dr. Salas-Rushford's reliance on discovery related documents further highlighted the insufficiency of his pleadings.

Adhering to the ABIM Parties' wish to treat their Motion for Judgment as a Rule 12(c) motion instead of a motion for summary judgment pursuant to Rule 56, and after considering the Parties' arguments, for the reasons set forth below, the Court GRANTS in part and HOLDS IN ABEYANCE in part, the ABIM Parties' Motion for Judgment at Docket Number 216.

## I.  Procedural and Factual Background

The travel of this case is extensive. Therefore, under this section, the Court will synthesize the factual and procedural background of this case. We begin by pointing out that, the CPTC comes on the heels of the copyright infringement claim, pursuant to 17 U.S.C. § 102 ("Complaint"), which ABIM filed against Dr. Salas-Rushford on October 17, 2014, before the United States District Court for the District of New Jersey

("District Court of New Jersey"). [4] *See* Docket No. 1. As pleaded in the Complaint, ABIM—a not-for-profit which grants Board Certification in Internal Medicine to candidates that satisfy its requirements—alleges that Dr. Salas-Rushford—a Puerto Rican physician—obtained and reproduced a significant amount of allegedly copyright protected questions which ABIM includes in its Internal Medicine Board Exam ("Exam"). *Id.* at ¶¶ 3, 7, 12, 28-29, 36-46. ABIM initiated said action after it purportedly identified Exam questions on an Exam review course ("Arora Review")

---

[4] On March 16, 2017, the District of New Jersey granted Dr. Salas-Rushford's Rule 12(c) motion. *See* Docket Nos. 153, 154. The District of New Jersey found that, ABIM's Complaint was time barred in view of the three-year statute of limitations prescribed in such actions. *Id.* On September 8, 2017, the District of New Jersey granted Dr. Salas-Rushford's Motion to Transfer. *See* Docket No. 173. On June 25, 2019, ABIM appealed the District of New Jersey's determination at Docket Numbers 153 and 154. *See* Docket No. 183. After several procedural developments, the case was transferred to the District of Puerto Rico on October 4, 2019. *See* Docket No. 189. On December 29, 2020, the Court was notified by the ABIM Parties, that the Third Circuit had issued an Opinion concerning ABIM's appeal. *See* Docket No. 239. The Third Circuit reversed and remanded the District of New Jersey's determination at Docket Numbers 153 and 154 after finding that ABIM's Complaint was not time barred and had been timely filed. *See* Docket No. 239-1.

website and having subsequently conducted an investigation into the Arora Review offered by Dr. Rajender K. Arora ("Dr. Arora"). *Id.* at ¶¶ 32-33, 49. ABIM next filed suit against the Arora Review. *Id.* at ¶ 49. The discovery process in that case—which was eventually settled—revealed a series of documents and email exchanges between Dr. Arora and Arora Review customers. *Id.* at ¶¶ 49-50. In January 2012, ABIM identified Dr. Salas-Rushford as one of the individuals who relayed the allegedly copyright protected Exam questions to Dr. Arora while purportedly having employed a pseudonym and different email than the one that he had used to sign up for the Arora Review in an attempt to conceal his identity. *Id.* at ¶¶ 35, 46, 50.

For its part, the CPTC focuses on the events that unfolded after ABIM identified Dr. Salas-Rushford as one of the individuals that collected and shared the allegedly copyright protected questions with Dr. Arora. Specifically, the CPTC takes on the three-stage disciplinary process that Dr. Salas-Rushford faced in light of ABIM's findings—which ultimately

resulted in the suspension of his ABIM board certification—
and the damages purportedly caused by ABIM and the ABIM
Individuals supposed mismanagement of said process.

According to Dr. Salas-Rushford's recitation of the facts,
in December 2008, he registered to take the Exam. Docket No.
33 at ¶ 30. The same would be offered in Puerto Rico on
August 20, 2009. *Id.* In order to prepare for the test, Dr. Salas-
Rushford enrolled in the Arora Review imparted by Dr.
Arora, an ABIM board certified physician. *Id.* at ¶¶ 30-35. The
Arora Review was reportedly recommended to Dr. Salas-
Rushford by several of his colleagues and professors from
Puerto Rico and New York. *Id.* at ¶ 31. Dr. Salas-Rushford
attended a six-day Arora Review in May 2009 which was held
at the City University of New York. *Id.* at ¶¶ 31, 34. Further,
Dr. Salas-Rushford avers that, leading up to the Exam, he
participated in several study groups where study material
that "derived form a multitude of sources" was exchanged.
*Id.* at ¶ 38. According to Dr. Salas-Rushford, he was under the
assumption that the study material that was exchanged had

been "independently created". *Id.* at ¶ 54. Dr. Salas-Rushford claims that, throughout the duration of the Arora Review, in addition to encouraging the participants of the course to ask him questions, Dr. Arora also asked that once the participants had taken the Exam, they share with him whether his review had been effective in helping them pass the same. *Id.* at ¶¶ 36-37. Dr. Salas-Rushford took and passed the Exam on August 20, 2009. *Id.* at ¶ 39. He claims that he never discussed the Exam with Dr. Arora after having taken it. *Id.* at ¶ 36.

Dr. Salas-Rushford alleges that, prior to taking the Exam, ABIM was aware of the problems with the Arora Review because it sent a "spy" to attend the course. *Id.* at ¶¶ 43-44. This "spy" supposedly identified over one thousand (1,000) questions that mirrored ABIM's copyright protected Exam questions. *Id.* at ¶ 44. However, per Dr. Salas-Rushford, ABIM, Dr. Cassel, Ms. Langdon and Dr. Holmboe failed to remove these questions from the Exam that he ended up taking on August 20, 2009. *Id.* at ¶ 45. Moreover, he claims

that ABIM failed to warn him about the alleged problems with the Arora Review. *Id.* at ¶ 43.

On May 8, 2012, Dr. Salas-Rushford received a letter signed by Ms. Langdon, on behalf of ABIM. *Id.* at ¶¶ 47-48. The letter informed Dr. Salas-Rushford as to the result of the investigation regarding Dr. Arora, and notified him that, it had identified emails that he had sent to Dr. Arora which contained Exam questions. *Id.* According to the letter, Dr. Salas-Rushford had collected the Exam questions, and proceeded to disguise and conceal his identity in order to relay the Exam questions to Dr. Arora. *Id.* Moreover, the letter allegedly quoted from the August 2009 ABIM Policies and Procedures for Certification ("ABIM Polices & Procedures") instead of the October 2008 ABIM Policies & Procedures which are the policies and procedures that Dr. Salas-Rushford claims govern the contractual relationship that he entered into with ABIM when he registered for the Exam. *Id.* at ¶ 48. In light of this conduct, which ABIM categorized as unethical and unprofessional, the letter stated that Dr. Salas-Rushford's

board certification had been recommended for revocation. *Id.* at ¶¶ 47-48. The revocation would be instituted within ten (10) days. *Id.* at ¶ 47.

After Ms. Langdon sent the May 8, 2012 letter, Dr. Salas-Rushford claims that she caused the ABIM website to show his board certification status as "Revocation Recommended". *Id.* at ¶ 50. At this point, Dr. Salas-Rushford alleges that he denied any wrongdoing, but, even then, Ms. Langdon refused to change his certification status on the ABIM website. *Id.* at ¶ 51. Moreover, he maintains that his certification status was changed in contravention of ABIM's policies of implementing such changes after having given an individual prior notification. *Id.* Shortly thereafter, Dr. Salas-Rushford submitted himself to ABIM's disciplinary process. *Id.* at ¶ 52. As claimed by Dr. Salas-Rushford, the ABIM Individuals participated in the disciplinary process which he alleges was "improvised" and did not figure in ABIM's Policies & Procedures that he argues applied to him. *Id.* The disciplinary process allegedly lasted well-over two years, during which

time, Dr. Salas-Rushford claims he was denied a copy of the applicable ABIM Policies & Procedures, was not told what specific rules or policies he had violated and was denied access to the original Exam questions which would have allowed him to compare them to the questions that he received from the Arora Review and colleagues, which he believed had been independently created. *Id.* at ¶¶ 53-54. It is Dr. Salas-Rushford's understanding that such actions on behalf of ABIM and the ABIM Individuals constituted a "total disregard of contractual good faith and due process". *Id.* at ¶ 53.

On July 24, 2014, the Final Hearing of the disciplinary process was held. *Id.* at ¶ 52. The Final Hearing panel was reportedly composed by three physicians that were designated by ABIM, to wit, Dr. Coleman, Dr. Von Feldt and Dr. O'Grady. *Id.* at ¶¶ 52, 55. On October 16, 2014, the members of the Final Hearing panel, sent a letter, on behalf of ABIM, to Dr. Salas-Rushford. *Id.* at ¶ 55. The letter, which was signed by Dr. Coleman, concluded that Dr. Salas-Rushford's

actions had been "unprofessional and unethical". *Id.* As such, Dr. Salas-Rushford's board certification was to be suspended for a period of seven (7) years, which would be counted retroactively, beginning on December 7, 2012. *Id.* Since the October 16, 2014 letter, Dr. Salas-Rushford's board certification status has been displayed on the ABIM website as "Not Certified", accompanied by the statement "INITIAL CERTIFICATION Internal Medicine: 2009". *Id.* at ¶ 57. In addition, Dr. Salas-Rushford has been blocked from the Maintenance of Certification process. *Id.* Dr. Salas-Rushford argues that the ABIM Parties' conduct was a concerted effort to destroy his "personal and professional life[.]" *Id.* at ¶ 58.

## II. Analysis

### A. *Motion for Judgment on the Pleadings Standard*

As noted above, before the Court is the ABIM Parties' Motion for Judgment under Rule 12(c). A motion under Rule 12(c) is afforded "much the same treatment" as a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)"). *See Aponte-Torres v. Univ. of Puerto Rico,* 445

F.3d 50, 54 (1st Cir. 2006) (internal citations omitted). For starters, a Rule 12(c) motion, like a Rule 12(b)(6) motion, "does not allow for any resolution of contested facts; rather, a court may enter judgment on the pleadings only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment." *Id.* (internal citations omitted). Having clarified this, we review the Rule 12(b)(6) standard.

Federal Rule of Civil Procedure 8(a)(2) states that a complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed.R.Civ.P. 8(a)(2). Specifically, when considering a Rule 12(b)(6) motion, the Court must determine whether plaintiff's complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To make such a determination, the Court embarks on a two-step analysis. *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). This analysis is a context-specific task that relies on the Court's "judicial experience and

common sense." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009). And, the Court is allowed to "augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *Haley v. City of Boston,* 657 F.3d 39, 46 (1st Cir. 2011).

First, while the Court is called to accept—in this case, Dr. Salas-Rushford's—well pleaded allegations as true, such a mandate does not mean that the Court is forever destined to do so, for "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not constitute well pleaded allegations under the Rule 12(b)(6) framework. *Iqbal,* 556 U.S. at 678. Therefore, the Court must identify and disregard conclusory factual allegations because it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (internal citations and quotations omitted).

Second, the Court examines whether the factual allegations—devoid of legal conclusions—allow "the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* That is, in order to survive such motion, Dr. Salas-Rushford must have set forth allegations that "nudge [his or her] claims across the line from conceivable to plausible." *Twombly,* 550 U.S. at 570.

### B. *Lanham Act Claim Under § 1125(a)*

The Court begins its analysis with a look at Dr. Salas-Rushford's claim against the ABIM Individuals under § 1125(a) of the Lanham Act. The provision of the Lanham Act relied upon by Dr. Salas-Rushford in the CPTC encapsulates two bases of liability, namely, false association, under § 1125(a)(1)(A) and false advertisement, under § 1125(a)(1)(B). *See Lexmark Intern v. Static Control Components, Inc.,* 572 U.S. 118, 122 (2014). In the course of evaluating the CPTC, the Court noticed that, while § 1125(a) is referenced, the subsection under which Dr. Salas-Rushford brought forth his

§ 1125(a) Lanham Act claim was not specified. [5] Further, in his
Opposition, Dr. Salas-Rushford analyzed his Lanham Act
claim under both subsections. *See* Docket No. 217 at pgs. 13-
16. Meanwhile, ABIM's Motion for Judgment solely tackled
the pleadings under the § 1125(a)(1)(B) rubric for it construed
the allegations set forth by Dr. Salas-Rushford as falling solely
under the purview of said subsection. *See* Docket No. 216 at
pgs. 15-19. Taking into account that § 1125(a) does in fact
provide for two distinct bases of liability, and assuming all
reasonable inferences in favor of Dr. Salas-Rushford's claims,
the Court will conduct its analysis under both subsections.

---

[5] It is worth noting that, in the CPTC, Dr. Salas-Rushford labeled his
Lanham Act claim as one for "Commercial Disparagement". Notably, in
his Opposition, Dr. Salas-Rushford referred to his allegations under §
1125(a)(1)(B) as constituting a claim for false advertisement. *See* Docket
No. 217 at pgs. 15-16. In this case, whether Dr. Salas-Rushford's claim
under § 1125(a)(1)(B) is labeled as one regarding "false advertisement" or
"commercial disparagement" does not alter the Court's analysis. In
keeping with the Supreme Court's terminology in *Lexmark* and the totality
of the claims as pleaded in the CPTC, the Court will refer to Dr. Salas-
Rushford's claims under § 1125(a)(1)(B) as "false advertisement" claims.

### i.        False Association Claims Under § 1125(a)(1)(A)

The false association prong of § 1125(a) refers to:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . .

*See* § 1125(a)(1)(A).

In his Opposition, Dr. Salas-Rushford posits that he has satisfactorily pleaded "two misleading descriptions of fact likely to cause confusion or mistake or to deceive[,]" regarding his certification status on ABIM's website. *See* Docket No. 217 at pg. 13. The first misleading description of fact, according to Dr. Salas-Rushford, refers to when the

ABIM Individuals—with the exception of Drs. O'Grady, Coleman and Von Feldt—reported on the ABIM website that his certification had been recommended for revocation. *Id.* at pgs. 13-14. Dr. Salas-Rushford argues that, because the ABIM Individuals failed to provide context to support the recommendation to revoke his board certification, and because his certification was not ultimately revoked, but rather, suspended, his "potential patients were misled by the ABIM [Individuals] about the underlying truth." *Id.* at pg. 14.

The second purported misleading description of fact pertains to the reporting on ABIM's website that Dr. Salas-Rushford's board certification was suspended. Specifically, Dr. Salas-Rushford takes issue with the placing of "Not Certified" accompanied by "INITIAL CERTIFICATION Internal Medicine: 2009" because according to him, this "certainly mislead[s] (and has mislead) potential patients as to Dr. Salas-Rushford's qualifications, licensing and quality of service, and certainly has bearing as to his affiliation or connection to ABIM and as to the approval of his services by

ABIM, particularly given that the suspension had nothing to do with his service standards." *Id.*

Dr. Salas-Rushford's arguments that his two "misleading descriptions of fact" articulate a claim under § 1125(a)(1)(A) fail on at least two fronts. For starters, Dr. Salas-Rushford's constant use of the word "misled" signals at a claim under § 1125(a)(1)(B) and not under § 1125(a)(1)(A). The choice of words and its implications are of great importance, for each subsection of § 1125(a) is governed by a different standard. While under § 1125(a)(1)(A) the movant need only to establish the likelihood of confusion, it is under § 1125(a)(1)(B) that the movant must show actual confusion or misleading statements. *See Facenda v. N.F.L. Films,* Inc., 542 F.3d 1007, 1021 (3d Cir. 2008). Other than a cursory reference to the word "confusion" in his Opposition, Dr. Salas-Rushford's does not point to any factual allegations which would reveal plausible consumer confusion. More strikingly, the CPTC itself is barren of any mention and factual allegation of a plausible likelihood of confusion in connection with the reporting of his

certification status on ABIM's website.

Second, and as discussed in further detail under the Court's discussion of subsection § 1125(a)(1)(B), the inferences and allegations that the reporting of Dr. Salas-Rushford's certification status on the ABIM website was potentially misleading to patients was not developed—which is what the Court understands Dr. Salas-Rushford is attempting to do by way of his Opposition—and pleaded in accordance with the applicable law to satisfy a claim under § 1125(a)(1)(A), much less under § 1125(a)(1)(B). Accordingly, Dr. Salas-Rushford has failed to articulate a plausible claim under § 1125(a)(1)(A).

### ii. *False Advertisement Claims Under § 1125(a)(1)(B)*

Having determined that, Dr. Salas-Rushford has not pleaded a claim under § 1125(a)(1)(A), the Court now tackles Dr. Salas-Rushford's claims pursuant to § 1125(a)(1)(B). To state a claim for false advertisement under the Lanham Act, the movant must show the following: "(1) a false or misleading description of fact or representation of fact by the

defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceives or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false or misleading statement, either by direct diversion of sales from itself to defendant or by a lessening of goodwill associated with its products." *See Clorox Co. P.R. v. Proctor & Gamble Commercial Co.* 228 F.3d 24, 39 n. 6 (1st Cir. 2000).

Whether the "false or misleading description of fact or representation of fact" pertain to "commercial advertisement" begs the question as to what constitutes "commercial advertisement" under § 1125(a)(1)(B). The First Circuit provides an answer to this question with a four-part test whereby the movant must plead that the representation "(a) constitute[s] commercial speech (b) [was] made with the intent of influencing potential customers to purchase the

speaker's goods or services (c) [was made] by a speaker who
is a competitor of the plaintiff in some line of trade or
commerce and (d) [was] disseminated to the consuming
public in such a way as to constitute 'advertising' or
'promotion.'" *See Podiatrist Ass'n, Inc. v. La Cruz Azul De
Puerto Rico, Inc.* 332 F.3d 6, 19 (1st Cir. 2003) (internal citations
omitted).[6]

---

[6] This four-part test was first articulated in *Gordon & Breach Sci. Publishers
S.A. v. Am. Inst. Of Physics,* 859 F. Supp. 1521, 1535-36 (S.D.N.Y. 1994) and
is oftentimes referred to as the Gordon & Breach test. Nearly twenty years
after *Gordon & Breach,* the Supreme Court held in *Lexmark,* 572 U.S. at 136,
that in order to establish a false advertisement claim, the movant need not
establish that the parties are in direct competition to each other. While, the
*Lexmark* decision focused on whether or not the movant had standing to
sue under § 1125(a) of the Lanham Act, to date, the First Circuit has not
addressed the *Lexmark* decision in this context. But other Circuits have
adapted the Gordon & Breach test to reflect the Supreme Court's decision.
For example, the Sixth Circuit did not adopt the competition requirement
but maintained the remaining three elements set forth by the Gordon &
Breach test when determining what entailed "commercial advertising or
promotion". *See Grubbs v. Sheakley Group, Inc.,* 807 F.3d 785, 801 (6th Cir.
2015). The Court acknowledges that the competition prong of the Gordon
& Breach test was addressed in ABIM's Motion for Judgment, and in both
Dr. Salas-Rushford's Opposition and CPTC. Be that as it may, because the
Court need not go so far in its analysis, how the First Circuit will go about
the *Lexmark* decision and its possible effect on the Gordon & Breach test is
not for us to delve into today.

ABIM's Motion for Judgment posits that, the speech which Dr. Salas-Rushford claims disparaged him and therefore violated § 1125(a)(1)(B) of the Lanham Act—to wit, when Ms. Langdon purportedly "made" the ABIM website state "Revocation Recommended" and later when the ABIM website reported his status as "Not Certified" accompanied by the phrase "INITIAL CERTIFICATION Internal Medicine: 2009"[7]—does not constitute commercial advertisement or promotion. *See* Docket No. 216 at pg. 17-19. In his Opposition, Dr. Salas-Rushford's argues that the speech in question constitutes an advertisement regarding his services. *See* Docket No. 217 at pg. 22. Therefore, looking at the first prong of the four-part test delineated in *Podiatrist*, the Court must determine whether the speech in question constitutes

---

[7] For ease of reference, when jointly referring to the publication of Dr. Salas-Rushford's certification status on the ABIM website, to wit, the instance whereby it was published that "Revocation [was] Recommended" and later when the ABIM website reported "Not Certified" accompanied by "INITIAL CERTIFICATION: Internal Medicine: 2009" the Court will do so by stating "the speech in question".

commercial speech.

In *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 66 (1983), the Supreme Court stated that "the core notion of commercial speech" is that "which does 'no more than propose a commercial transaction.'" (internal citations and quotations omitted). After examining the CPTC, the Court finds that, the speech in question, is merely reporting Dr. Salas-Rushford's certification status. The same does not address his services or goods. Moreover, there are no pleaded factual allegations regarding the economic benefits that the ABIM Individuals would have reaped in reporting the speech in question. The CPTC lacks developed factual allegations which would allow the Court to gauge a plausible inference that with the publication of the speech in question on the ABIM website, any of the ABIM Individuals were guided by an economic motivation.

The Court's analysis could come to an end here, however, assuming *arguendo* that the speech in question were to be deemed "commercial speech" and we were to be dealing with

a commercial advertisement, we proceed to take a look as to whether the speech in question—as pleaded—contains false or misleading representations of fact. For Dr. Salas-Rushford to "succeed on a false advertising claim [he must prove] either that an advertisement is false on its face or that the advertisement is literally true or ambiguous but likely to mislead and confuse consumers." *Clorox*, 228 F.3d at 33. Therefore, the Court must evaluate under which of the two categorizations Dr. Salas-Rushford has pleaded that the speech in question falls under.

At the heart of the CPTC is Dr. Salas-Rushford's contention that the allegations which led Ms. Langdon—who is the only ABIM Individual that Dr. Salas-Rushford connects to the relaying of the "Revocation Recommended" speech onto the ABIM website—were false. Docket No. 33 at ¶ 49. However, he does not deny that that a recommendation for revocation was issued and that the disciplinary process that he faced ultimately resulted in the suspension of his board certification. *Id.* at ¶¶ 50, 55, 57. Nor does he deny that as a

consequence of such determinations, the changes in his certification status were reported on the ABIM website. *Id.* at ¶¶ 50, 57. Considering these elements, the Court finds that Dr. Salas-Rushford's allegations regarding the speech in question are to be construed as literally true, "but likely to mislead" consumers.

To satisfy such a showing, Dr. Salas-Rushford was tasked with demonstrating "how consumers actually reacted to the challenged advertisement rather than merely demonstrating how they could have reacted." *Clorox*, 228 F.3d at 33. The Court is aware that at the pleadings stage, Dr. Salas-Rushford must solely comply with the pleading standard found in Fed.R.Civ.P. 8, yet the fact remains that the CPTC does not plead how the purported consumers reacted to the speech in question. The closest Dr. Salas-Rushford comes to such a showing is his assertion that when Ms. Langdon allegedly made the ABIM website reflect that his status had been changed to "Revocation Recommended" such "innuendo laden change" was directed at "patients, potential patients,

colleagues, potential employers, insurers and hospitals in the states where he is licensed to practice medicine". *See* Docket No. 33 at ¶ 50. And that the consumer was unable to identify "the factual allegations which gave rise to the recommendation to revoke." *Id*. But this does not satisfy even the lax pleading standard afforded at this stage, for Dr. Salas-Rushford's pleadings have not shed any light as to "how" these individuals and entities reacted to the publication of his change in certification status. For example, Dr. Salas-Rushford has not pleaded that patients refused his services due to the change in his certification status or that he missed out or was denied potential employment or business opportunities.[8]

---

[8] As noted above, while developing his arguments under § 1125(a)(1)(A), Dr. Salas-Rushford argued in his Opposition that potential patients had been misled as to his quality of service as a physician and affiliation or connection to ABIM due to the speech in question. *See* Docket No. 217 at pgs. 13-14. However, other than a generalized statement in the CPTC (Docket No. 33 at pg. 10) to the effect that ABIM "intentionally and baselessly mislead[] Dr. Salas-Rushford's patients and potential patients, employers and insurers about the quality of Dr. Salas Rushford's medical care[,]" in the opening paragraph of his CPTC, which did not even address

The same rationale applies to the reporting of the "Not Certified" and "INITIAL CERTIFICATION Internal Medicine: 2009" statements on ABIM's webpage. Here, Dr. Salas-Rushford claims that the publication of the aforesaid made it "obvious for the public that his certification was suspended." *Id.* at ¶ 57. But, such assertion discredits Dr. Salas-Rushford's argument that the statement was misleading, for what he is ultimately pleading is that the public was not misled. By stating that it was "obvious" for the public that his certification had been suspended—and that is what the publication on the ABIM website of his status as "Not Certified" accompanied by "INITIAL CERTIFICATION Internal Medicine: 2009", relayed to the public—Dr. Salas-Rushford cannot plausibly articulate that the public was misled. And, even if this was categorized as "misleading"

how ABIM misled these individuals and entities—the argument was never developed and pleaded. Moreover, the aforementioned generalized statement that Dr. Salas-Rushford included in the CPTC was underdeveloped for purposes of § 1125(A)(1)(B), for under said subsection Dr. Salas-Rushford was required to plead how consumers reacted to the speech in question, yet he failed to so.

speech, the allegation still misses the mark under §
1125(a)(1)(B), for it fails to state "how" individuals reacted to
the speech in question. Accordingly, ABIM's Motion for
Judgment as to Dr. Salas-Rushford's Lanham Act claim is
GRANTED.

### C. *General Tort Claim Pleaded in the Alternative to §* *1125(a) of the Lanham Act*

While addressing Dr. Salas-Rushford's general tort claim
under Article 1802 of the Puerto Rico Civil Code ("Article
1802"), identified as the "Fourth Claim for Relief" in the
CPTC, the ABIM Parties' Motion for Judgment underscores
that this claim runs afoul of Rule 8 for it does not provide
sufficient notice as to the nature of the claim itself. *See* Docket
No. 216 at pg. 23. In an attempt to decipher the claim, the
ABIM Parties present a possibility: that Dr. Salas-Rushford
has attempted to plead a defamation claim. *Id.* at pgs. 22-23.
In his Opposition, Dr. Salas-Rushford argues that by
categorizing his claim as a defamation claim, the ABIM

Parties' are attempting to build "strawmen arguments based on common-law torts[,]" and that such claim is "inapplicable to Puerto Rico law or to the actual pleadings." *See* Docket No. 217 at pg. 18. Dr. Salas-Rushford therefore argued that Article 1802 should guide the Court's analysis. *Id.* at 16. However, in his Opposition, Dr. Salas-Rushford appears to have conflated the discussion of his "Third Claim for Relief" with his "Fourth Claim for Relief" in such a way that it remains unclear whether he addressed his "Fourth Claim for Relief" in his Opposition. Similarly, during the Hearing, Counsel for Dr. Salas-Rushford did not differentiate between the two general tort claims. Therefore, the Court is solely left with the CPTC in order to conduct its analysis. With the CPTC alone, the Court coincides with the ABIM Parties' view that it is difficult to discern the nature of Dr. Salas-Rushford's claim. The claim in question reads as follow:

> Dr. Salas Rushford is a well-respected physician in the Commonwealth of Puerto Rico and ABIM and the ABIM Individuals acted maliciously and/or negligently, with knowledge that the information disseminated was false, and/or with total disregard of its veracity, thus causing damages to Plaintiff. The published information has been verified, read and learned by hospital, patients, physicians, and others, thus causing harm to Plaintiff's personal and professional reputation.

*See* Docket No. 33 at ¶ 68.

The first sentence is riddled with conclusory statements which attempt to fill in the blanks of an action under Article 1802. Moreover, Dr. Salas-Rushford does not clarify what was the information that was disseminated, contrary to his Lanham Act claim which specified that the "information" in question was the information published in the ABIM website regarding Dr. Salas-Rushford. *Id.* at ¶ 64. However, the second sentence sheds some light on the Court's quest to gauge what is being claimed, for it mentions the "published information", and while Dr. Salas-Rushford does not specify

the contents of the "published information", in affording all
reasonable inferences in Dr. Salas-Rushford's favor, the Court
assumes he means the speech in question for in his CPTC it is
the only "information" that he has pleaded was published on
the ABIM website. This second sentence also clarifies that the
publication of the speech in question damaged his "personal
and professional reputation." Such allegation is
quintessential of a defamation claim. *See APX Alarm Sec. Sols.,
Inc. v. Renaissance Mktg., Inc.*, Civil No. 06-1776, 2009 WL
3161029 at *4 (D.P.R. Sept. 29, 2009) (defining defamation as
the "act of discrediting a person by stating information
injurious to the reputation of such person.") (internal citations
omitted)).

Albeit Dr. Salas-Rushford's argument that a defamation
claim does not fall under the purview of Puerto Rico law, the
case law is clear: a defamation claim is actionable precisely
under Article 1802. *See Castillo-Perez v. Bosques-Cordero*, Civil
No. 10-1584, 2011 WL 13233491 at *11 (D.P.R. July 15, 2011),
report and recommendation adopted, 2011 WL 13233491

(D.P.R. Aug. 30, 2011). More strikingly, Dr. Salas-Rushford pleaded this purported "general tort" claim in the alternative to his Lanham Act claim which drove at how the speech in question was disparaging to him. *See* Docket No. 33 at pg. 11.

Before delving into a defamation analysis, there is an issue which the Court must first address, to wit, the choice of law matter raised by the ABIM Parties in the Motion for Judgment. *See* Docket No. 216 at pg. 20 n. 11. While the ABIM Parties questioned the applicability of Puerto Rico law to this claim, the ABIM Parties subsequently noted that "[t]he Court need not decide [the applicable law] because the pleadings give rise to no plausible inference that the ABIM parties breached any legally cognizable duties to Dr. Salas Rushford." *Id.* In his Opposition, Dr. Salas-Rushford did not elaborate on this point for he deemed that the ABIM Parties' had effectively abandoned their applicable law argument. *See* Docket No. 217 at pg. 16 n. 4 (stating that "[s]ince the argument is abandoned, we do not address it, but are confident that Puerto Rico law does apply."). At the Hearing

the Court inquired as to this matter. The ABIM Parties replied that the choice of law question ultimately made no difference. With this context, it remained unclear to the Court whether the ABIM Parties had in fact abandoned this argument, however, as analyzed below, Dr. Salas-Rushford's claim fails under both Puerto Rico and New Jersey law.

In order to establish a claim for defamation under Article 1802, Dr. Salas-Rushford was called to establish that the published information (1) was false, (2) resulted in damages, and (3) was published negligently.[9] *See Ayala Gerena v. Bristol Myers-Squibb Company*, 95 F.3d 86, 98 (1st Cir. 1996) (internal

---

[9] This is the analysis employed when the plaintiff is a private person. *See Diaz v. Gazmey Santiago*, Civil No. 18-1779, 2020 WL 1042041 at * 3-4 (D.P.R. Mar. 3, 2020). Conversely, the standard when it comes to a public figure is heightened for it requires that the plaintiff establish that the information was published with actual malice. *Id.* Here, none of the Parties have argued that Dr. Salas-Rushford is a public figure, although the CPTC certainly hints as much in light of the statements whereby he proclaims that he is "a skilled, accomplished, published, recognized physician in his community." *See* Docket No. 33 at ¶ 40. However, we need not delve into this today given that Dr. Salas-Rushford fails to satisfy the lax standard under the "private person" analysis, and would subsequently fail to satisfy the more stringent standard outlined for cases concerning a "public figure".

citations omitted). Likewise, under New Jersey law, Dr. Salas-Rushford must have pleaded the following: "(1) a defamatory statement; (2) concerning [Dr. Salas-Rushford]; (3) which was false; (4) that was communicated to someone other than [Dr. Salas-Rushford]; (5) with fault at least amounting to negligence; and (6) damages." *See Beu v. City of Vineland*, Civil No. 20-02510, 2020 WL 7418007, at *7 (D.N.J. Dec. 18, 2020) (internal citations omitted).

Here, and as the Court's discussion addressing the claims under the Lanham Act revealed, Dr. Salas-Rushford has not pleaded that the published information—meaning, the speech in question—is false. Rather, Dr. Salas-Rushford has done the opposite for in the CPTC he acknowledged that his board certification was initially recommended for revocation and was subsequently suspended, just as the ABIM website reported. *See* Docket No. 33 at ¶¶ 50, 57. Dr. Salas-Rushford certainly takes issue with the underlying disciplinary process that he faced, and whether or not the allegations that got said process in motion were adequately brought forth against him,

but inasmuch as the Court was able to construe his claims, such allegations are tied—as pleaded—to his contractual breach claim and general tort claim which was raised in the alternative to his contractual breach claim, and not to the publication of his certification status on the ABIM website.

The Court also notes that under a negligence analysis, Dr. Salas-Rushford's claim would likewise fail. In order to set forth a claim for negligence under Puerto Rico law, Dr. Salas-Rushford must have identified the following three elements: "(1) an act or omission constituting fault or negligence; (2) injuries; and (3) a causal connection between the act or omission and the injuries." *In re Caribbean Petroleum, LP*, 561 F.Supp.2d 194, 199 (D.P.R. 2008) (internal citations omitted). Similarly, under New Jersey law, Dr. Salas-Rushford must have pleaded the following elements: "(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages." *See E.S. v. Elizabeth Bd. of Educ.*, Civil No. 2:20-01027, 2020 WL 7640537, at *4 (D.N.J. Dec. 23, 2020) (internal citations omitted). Here, Dr. Salas-Rushford's claim suffers

from the same flaws discussed in our discussion surrounding defamation. For starters, the "information disseminated" is not identified. And, even when considering the speech in question—which is the only information that Dr. Salas-Rushford claims was published—he has failed to plead the "negligent" or "malicious" acts allegedly committed by ABIM and the ABIM Individuals which resulted in damages to his personal and professional reputation in connection with the published information.

Even if we were to construe Dr. Salas-Rushford's allegation that ABIM and Ms. Langdon asserted the recommendation for revocation without purportedly affording him any notice or opportunity to respond or refute the charges against him which he claims were false under a negligence analysis, either under Puerto Rico or New Jersey

law, the same would still fail. *See* Docket No. 33 at ¶ 51.[10] In
the Motion for Judgment, the ABIM Parties attached two
letters that were sent by Ms. Langdon, on behalf of ABIM, to
Dr. Salas-Rushford, which he incorporated by reference to his
CPTC and we therefore consider in our analysis.[11] The letters
address the recommendation for revocation. The first, which
is a letter dated May 8, 2012, informed Dr. Salas-Rushford as
to ABIM's findings regarding its investigation into the Arora
Review and noted that his certification status would be
updated ten days from the date of the letter. *See* Docket No.
216-1. The letter also informed Dr. Salas-Rushford that if he
wished for ABIM to consider any information regarding the
matter, he should submit the same. *Id.* Moreover, the letter

---

[10] The Court's reading of this allegation is that the same falls under the
contract breach claim or the general tort claim that stemmed from the
same, but once again, we have looked at the multiple potential legal
constructions of Dr. Salas-Rushford's arguments in view of their tangled
nature.

[11] Dr. Salas-Rushford did not dispute the authenticity of these letters in his
Opposition.

stated that the recommendation for revocation could be appealed through ABIM's three-stage process and would not become final while the appeal was pending. *Id.*

The second letter is dated December 7, 2012. Docket No. 216-2. There, Ms. Langdon confirmed receipt of letters sent by Dr. Salas-Rushford but reaffirmed that that the recommendation for revocation remained in place. *Id.* However, Dr. Salas-Rushford was still free to partake in ABIM's three-stage appeal process. *Id.* He was also notified that ABIM would consider any additional information that he wanted to provide, and that he must provide the same by January 7, 2013. *Id.* These exchanges denote that Dr. Salas-Rushford was afforded prior notification as to his situation and given an opportunity to respond. Accordingly, the Motion for Judgment as to Dr. Salas-Rushford's "Fourth Claim for Relief", is GRANTED.

D. *Breach of Contract Claim and General Tort Claims*

In the CPTC, Dr. Salas-Rushford pleaded that, upon registering for the Exam, at some point in December 2008, the

ABIM October 2008 Policies & Procedures governed the
contractual relationship that he purportedly entered into with
ABIM. *See* Docket No. 33 at ¶ 30. As gleaned from ABIM's
Motion for Judgment and its Reply, its main argument hinges
on Dr. Salas-Rushford's alleged failure to pinpoint a
contractual obligation that ABIM was bound by and that it
purportedly breached. *See* Docket No. 216 at pgs. 13-15;
Docket No. 219 at pgs. 6-8. For his part, in his Opposition, Dr.
Salas-Rushford counters with what the Court reads as the
overarching argument that, ABIM breached the contract
when it revoked his certification by way of what—in his
view—was an arbitrary disciplinary process. *See* Docket No.
217 at pgs. 8-12. In support of this proposition, Dr. Salas-
Rushford references several instances in his CPTC which he
alleges reveal such breach. *Id.*

During the Hearing, Counsel for ABIM stated that the
ABIM Policies & Procedures were provided to Dr. Salas-
Rushford. Nevertheless, Counsel for Dr. Salas-Rushford
remained steadfast in his assertion that his client was never

provided a copy of said document. The Court finds that the ABIM Policies and Procedures is a fundamental document in this controversy which must be produced in order for our inquiry to move forward as to the breach of contract claim and the general tort claim, identified as the "Third Claim for Relief", which was pleaded in the alternative to the breach of contract claim. *See* Docket No. 33 at pg. 10. Until then, we must hold in abeyance ABIM's Motion for Judgment regarding the breach of contract claim and tort claim that stems from it.

There remains one loose end, for whether Puerto Rico law or New Jersey law governs these remaining claims is a point of contention between the Parties.  At this time, the Court will reserve determination of the choice of law regarding the same, particularly in light of the possibility that the ABIM Policies & Procedures may include a choice of law provision. The Court will, however, point out that, because this case was transferred from the District of New Jersey, our choice of law analysis as to both the breach of contract claim and the

outstanding general tort claim will be guided by New Jersey choice of law rules. *See Van Dusen v. Barrack*, 376 U.S. 612 (1964) (articulating the principle that when a case is transferred pursuant to 28 U.S.C. § 1404(a), the transferee Court must apply the law of the jurisdiction where the action was originally filed, including choice of law rules.).

### III. Conclusion

The Court hereby:

- **GRANTS** the ABIM Parties' Motion for Judgment as to Dr. Salas-Rushford's Lanham Act claims under § 1125(a) and tort claim pleaded in the alternative to said claim[12], therefore **DISMISSING** both claims;

- **HOLDS IN ABEYANCE** the ABIM Parties' Motion for Judgment as to Dr. Salas-Rushford's breach of contract claim and tort claim related to the same[13]; and

---

[12] Second and Fourth Claims for Relief in the CPTC.

[13] First and Third Claims for Relief in the CPTC.

- **ORDERS** the ABIM Parties to file before the Court the October 2008 ABIM Policies & Procedures in addition to any other ABIM Policies & Procedures in effect at the time of the disciplinary proceedings. This production shall be made on or before **February 1, 2021**.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 20th day of January 2021.

*S*/SILVIA CARRENO-COLL
UNITED STATES DISTRICT COURT JUDGE