IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

AMERICAN BOARD OF INTERNAL
MEDICINE, ET AL.,

Plaintiffs, Counterclaim and
Third- Party Defendants

v.

JAIME A. SALAS RUSHFORD, M.D.,

Defendant, Counterclaim and
Third-Party Plaintiff

CIV. NO.: 19-1943 (SCC)

**OPINION AND ORDER**

On January 20, 2021, the Court entered an Opinion and

Order, *see* Docket No. 241, granting the ABIM Parties'[1] Motion

---

[1] Dr. Jaime A. Salas-Rushford ("Dr. Salas-Rushford") filed his
Counterclaim and Third-Party Complaint ("CTPC") against the American
Board of Internal Medicine ("ABIM") and Richard J. Baron, M.D.,
Christine K. Cassel, M.D., Lynn O. Langdon, M.S., Eric S. Holmboe, M.D.,
David L. Coleman, M.D., Joan M. Von Feldt, M.D., and Naomi P. O'Grady,
(collectively, the "ABIM Individuals"). *See* Docket No. 33. For the sake of
uniformity, throughout this Opinion and Order, the Court will refer to the
"ABIM Parties" when discussing both ABIM and the ABIM Individuals.

for Judgment on the Pleadings ("Motion for Judgment") under Federal Rule of Civil Procedure 12(c) ("Rule 12(c)"), *see* Docket No. 216, regarding two out of the four claims set forth by Dr. Jaime A. Salas-Rushford ("Dr. Salas-Rushford") in his Counterclaim and Third-Party Complaint ("CTPC"), *see* Docket No. 33, namely, his Lanham Act claim under 15 U.S.C. § 1125(a) and a general tort claim pursuant to Puerto Rico law.[2] While the ABIM Parties' Motion for Judgment also addressed Dr. Salas-Rushford's two remaining claims—a breach of contract claim against ABIM and another general tort claim under Puerto Rico law related to the same against the ABIM Individuals—the Court held in abeyance its determination regarding the fate of these two claims until the ABIM Parties filed before the Court the October 2008 ABIM Policies & Procedures, in addition to any other ABIM Policies & Procedures in effect at the time of the disciplinary

---

[2] Identified as the Second and Fourth Claims for Relief in Dr. Salas-Rushford's CTPC.

proceedings.[3] *See* Docket No. 241 at pg. 43.

On February 1, 2021, the ABIM Parties complied with this Court's directive ("Motion in Compliance"). *See* Docket No. 243. With the Motion in Compliance, the ABIM Parties submitted five documents. *See* Docket Nos. 243-1 to 243-5.[4] The Motion in Compliance also included brief descriptions and touched upon certain sections of the attached documents. *See* Docket No. 243. Dr. Salas-Rushford timely opposition to the Motion in Compliance followed ("Opposition to the Motion in Compliance"). *See* Docket No. 244.

---

[3] The Court clarifies that, throughout this Opinion and Order we have referred to "ABIM's internal disciplinary process" and "ABIM's three-stage appeals process" interchangeably.

[4] Specifically, the ABIM Parties submitted the following documents: (1) October 2008 ABIM Policies & Procedures, *see* Docket No. 243-1; (2) Excerpt of the October 2008 ABIM Policies & Procedures, *see* Docket No. 243-2; (3) Email from Hara K. Jacobs to Dr. Salas-Rushford, detailing ABIM's three-stage appeals process in order to contest the recommendation that his board certification be revoked, *see* Docket No. 243-3; (4) August 2009 ABIM Policies & Procedures, *see* Docket No. 243-4; and (5) Screenshot of ABIM's Pledge of Honesty, *see* Docket No. 243-5.

In his Opposition to the Motion in Compliance, Dr. Salas-Rushford contested the authenticity of the documents that were submitted by the ABIM Parties—those attached at Docket Nos. 243-1 and 243-5—, challenged the grounds for the suspension of his board certification, in view of the portions of the ABIM Policies & Procedures highlighted by the ABIM Parties in their Motion in Compliance, and rehashed several of his arguments concerning the breach of contract and general tort claims. *Id.* Regarding the choice of law that should guide this Court's inquiry as to the remaining claims, Dr. Salas-Rushford remained steadfast that Puerto Rico law should apply. *Id.* Dr. Salas-Rushford also requested a hearing to address the Motion in Compliance and once again moved the Court for leave to amend the CTPC.[5] *Id.* The

---

[5] In his Opposition to the ABIM Parties' Motion for Judgment, Dr. Salas-Rushford initially requested leave to amend his CTPC. *See* Docket No. 217 at pgs. 31-32. This request was not addressed in the Court's January 20, 2021 Opinion and Order. However, because the same was renewed in Dr. Salas-Rushford's Opposition to the Motion in Compliance, *see* Docket No. 244 at pg. 8, the Court will address said request in this Opinion and Order at section "C: Request to Amend the CTPC".

hearing was held on April 7, 2021. The Court took the matter under advisement, *see* Docket No. 250, and subsequently ordered the ABIM Parties to authenticate the documents at Docket Nos. 243-1 to 243-5, *see* Docket No. 251. The ABIM Parties complied with this Court's Order and filed the declarations of Ruth Hafer—an ABIM employee[6]—and Hara K. Jacobs—outside counsel for ABIM—authenticating the documents at Docket Nos. 243-1 to 243-5. *See* Docket No. 252.

For the reasons set forth below, the Court **GRANTS** the ABIM Parties' Motion for Judgment at Docket No. 216 as to Dr. Salas-Rushford's breach of contract and general tort claims and **DENIES** Dr. Salas-Rushford's request for leave to amend the CTPC.

## I.   Analysis

The Court reminds the Parties that, the journey of this case as well as the standard of review employed when analyzing a motion for judgment on the pleadings pursuant to Rule

---

[6] Identified as a Credentials and Licensure Manager at ABIM. *See* Docket No. 252-1 at ¶ 1.

12(c) were included in our January 20, 2021 Opinion and Order. *See* Docket No. 241 at pgs. 4-15. The Court therefore incorporates the same by reference without having to repeat it here. Having clarified this, we begin our analysis with Dr. Salas-Rushford's breach of contract claim, followed by his general tort claim. Lastly, we address Dr. Salas-Rushford's request for leave to amend his CTPC.

**A.** *Breach of Contract Claim*

As a threshold matter, the Court notes that, throughout the briefs filed by Dr. Salas-Rushford addressing the ABIM Parties' Motion for Judgment and Motion in Compliance, in addition to the hearings held in tandem and as pleaded in his CTPC, Dr. Salas-Rushford has maintained, that his breach of contract claim should be analyzed pursuant to Puerto Rico contract law. While it was initially unclear where the ABIM Parties stood regarding this matter, given that in their Motion for Judgment they did not set forth a cohesive argument regarding the choice of law that should apply to the breach of contract claim—for they included case law from the First

Circuit and the District of New Jersey when addressing the same—Counsel for the ABIM Parties sustained during the April 7, 2021 hearing that New Jersey law, not Puerto Rico law, would apply.[7] However, Counsel for the ABIM Parties did not elaborate on this point and merely stated that the matter had already been addressed in their briefs. [8]  But the Court does not find that such is the case, particularly because the only reference to the choice of law matter was addressed in cursory fashion by the ABIM Parties in a footnote, *see* Docket No. 216 at pg. 20 n. 11,  where the discussion centered around Dr. Salas-Rushford's general tort claims, not his breach of contract claim. The Court therefore finds it necessary to conduct its own analysis.

---

[7] As noted in our January 20, 2021 Opinion and Order, during the November 17, 2021 hearing, Counsel for ABIM affirmed that, ultimately the choice of law matter was inconsequential. *See* Docket No. 241 at pgs. 33-34.

[8] In the Motion for Compliance, the ABIM Parties did, however, represent that the ABIM Policies & Procedures do not include a choice of law provision. *See* Docket No. 243 at pg. 2 n. 2.

The CTPC was originally filed before the District of New Jersey and was subsequently transferred to the District of Puerto Rico pursuant to 28 U.S.C.A. § 1404(a). *See* Docket No. 173. Generally, a court sitting in diversity applies the substantive law of the forum state, including its choice of law rules. *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. Of Texas,* 571 U.S. 49, 65 (2013); *Gasperini v. Ctr. For Humanities,* 518 U.S. 415, 427 (1996). However, a transfer under § 1404(a) entails an exception to this norm, for the transferee Court must turn to the law of the jurisdiction where the suit was originally filed. *See Ferens v. John Deere Co.,* 494 U.S. 516, 519 (1990); *Van Dusen v. Barrack,* 376 U.S. 612 (1964). As highlighted by the *Van Dusen* court, a transfer pursuant to § 1404(a) is "generally intended, on the basis of convenience and fairness, simply to authorize a change of courtrooms." *Id.* at 636-37. Accordingly, this Court's choice of law analysis must follow New Jersey's choice of law rules.

New Jersey choice of law rules invoke a two-part test whereby the Court is first instructed to examine the substance

of the potentially applicable laws in order to determine if there is an actual conflict between the two. *Zydus Worldwide DMCC v. Teva API Inc.*, 461 F. Supp. 3d 119, 132 (D.N.J. 2020). It is understood that, "[a] conflict arises when there exists a 'distinction' between the substance of the potentially applicable laws." *Arcand v. Brother Intern. Corp.*, 673 F. Supp.2d 282, 293 (D.N.J. 2009) (citing *P.V. v. Camp Jaycee*, 197 N.J. 132, 143-45, 962 A.2d 453 (2008)). If no such conflict exists, the Court applies the law of the forum state. *See Curtiss-Wright Corp. v. Rodney Hunt Co. Inc.*, 1 F. Supp. 3d 277, 283 (D.N.J. 2014). But if a conflict does in fact exist, the Court moves on to the second prong of the test and examines which jurisdiction has the "most significant relationship" to the claim pursuant to the factors espoused in § 188 of the Restatement (Second) of Conflict of Laws.[9] *See In re Subaru*

---

[9] The Restatement lists the following factors for consideration: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil[e], residence, nationality, place of incorporation and place of business of the parties." *See Beth Schiffer Fine Photographic Arts, Inc. v. Colex Imagining, Inc.*, Civ. No. 10-05321, 2012 WL 924380, at *11 (D.NJ.

*Battery Dran Prod. Liab. Litig.*, Civil No. 1:20-cv-03095, 2021 WL 1207791, at *10 (D.N.J. Mar. 31, 2021).

In order to successfully set forth a breach of contract claim under New Jersey law, the following must be pled: (1) a valid contract between the parties; (2) failure of a party to perform its obligations pursuant to the contract; and (3) a causal nexus between the contractual breach and the damages suffered by the other party. *Sheet Metal Workers Intern. Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 (3d Cir. 2013) (citing *Coyle v. Englander's*, 199 N.J. Super. 212, 488 A.2d 1083, 1088 (N.J. Super. Ct. App. Div. 1985)).  Similarly, the following elements must be pled in order to establish a cause of action for breach of contract under Puerto Rico law: (1) the existence of a valid contract;  (2) a showing that said contract was breached by one of the parties; (3) and damages resulting from the breach. *R & T Roofing Contractor, Corp. v. Fusco Corp.*, 265 F. Supp. 3d 145, 154 (D.P.R. 2017).

―――――――――――

Mar. 19, 2012) (citing Restatement (Second) Conflict of Laws § 188(2)).

With this framework in tow, the Court finds that New Jersey law applies, for there is no apparent conflict of law between the two as far as a breach of contract claim is concerned. The Court therefore need not consider the second prong of the two-part test. But even assuming *arguendo* that Puerto Rico contract law applied, being as the necessary elements to set forth a breach of contract claim pursuant to Puerto Rico law are essentially the same as those under New Jersey law, as the analysis below shows, Dr. Salas-Rushford's claim still misses the mark due to his failure to satisfy a key element necessary to advance a breach of contract claim under both New Jersey and Puerto Rico law, to wit, the purported contractual breach by ABIM.

As noted above, the first element necessary to establish a breach of contract claim is the existence of a valid contract. In order for a valid contract to materialize, the following elements must be present: (1) an offer; (2) acceptance of said offer; and (3) consideration. *See Timm v. Wells Fargo Bank, N.A.*, Civil No. 15-8363, 2016 WL 5852848, at *3 (D.N.J. Sept.

29, 2016) (citing *Smith v. SBC Commc'ns Inc.*, 178 N.J. 265,283, 839 A.2d 850, 861 (2004)).[10] In the CTPC, Dr. Salas-Rushford alleges that, in order to become board certified by ABIM, at some point in December of 2008, while in Puerto Rico, he "registered online to take the ABIM Board Exam to be held in Puerto Rico. He paid with a credit card registered with a billing address of San Juan, Puerto Rico from funds located in San Juan, Puerto Rico. He was authorized to take the ABIM Board Exam which would be held on August 20, 2009." Docket No. 33 at ¶ 30. According to Dr. Salas-Rushford, once he registered for the ABIM Board Exam, the ABIM Policies & Procedures governed the contractual relationship entered into with ABIM. *Id.* Dr. Salas-Rushford took and passed the ABIM Board Exam on August 20, 2009. *Id.* at ¶ 39. The Court finds that, the factual scenario—as pleaded by Dr. Salas-

---

[10] Likewise, under Puerto Rico law, a valid contract exists in view of (1) the consent of the parties; (2) the object of the contract; and (3) a cause, also referred to as "consideration". *See Citibank Global Markets, Inc. v. Rodriguez Santana,* 573 F.3d 17, 24 (1st Cir. 2009).

Rushford—reveals that, he entered into a contract with ABIM, in order to become board certified by ABIM, and that the ABIM Policies & Procedures were to control the contractual relationship between the two. The question therefore hinges on which of the ABIM Policies & Procedures constitute the applicable contract with regard to the instant controversy.

In the CTPC, Dr. Salas-Rushford pleaded that the October 2008 ABIM Policies & Procedures governed the contractual relationship entered into with ABIM. *Id.* at ¶ 30. He maintains this argument in his briefs and representations before the Court. Furthermore, Dr. Salas-Rushford rejects the applicability of the August 2009 ABIM Policies & Procedures, which ABIM relied on throughout its communications regarding the conduct that gave rise to the recommendation for revocation and ultimate suspension of his board certification, for he understands that they are "qualitatively different" from the October 2008 ABIM Policies & Procedures. *Id*. at ¶ 48. Moreover, Dr. Salas-Rushford alleges that the August 2009 ABIM Policies & Procedures were published

after he sat down for the ABIM Board Exam. *Id.*

The Court reviewed the October 2008 ABIM Policies & Procedures which referred to the provisions outlining the grounds for suspension or revocation of a diplomate's board certification vis-à-vis the August 2009 ABIM Policies & Procedures. *See* Docket Nos. 243-1, 243-2 and 243-4. A side by side comparison of these documents reveals that the portions pertaining to the potential suspension or revocation of board certification in addition to behavior related to the ABIM Board Exam are not "qualitatively different" as Dr. Salas-Rushford contends. Rather, these sections happen to mirror each other. *See* Docket Nos. 243-1, 243-2 and 243-4 at pg. 18. Meaning that, even after making all favorable inferences in Dr. Salas-Rushford's favor and taking as true his contention that the August 2009 ABIM Policies & Procedures went into effect after he took the ABIM Board Exam, ultimately, both documents would have put Dr. Salas-Rushford on notice as to the grounds of a potential suspension or revocation of his board certification. Having determined that a valid contract

was entered into between Dr. Salas-Rushford and ABIM, and that the October 2008 and August 2009 Policies & Procedures track each other, as far as the revocation or the suspension of board certification is concerned, the Court turns to, the purported contractual breach.

In their Motion for Judgment, the ABIM Parties argue that the CTPC is devoid of any mention as to the contractual obligation that ABIM owed to Dr. Salas-Rushford and which it supposedly breached. *See* Docket No. 216 at pgs. 14-16. In his Opposition to the Motion for Judgment ("Opposition"), Dr. Salas-Rushford counters that, because board certification was the object of the contract entered into with ABIM, the revocation or suspension of the same, entails a material breach of the contract by ABIM. *See* Docket No. 217 at pg. 16. In support of his argument, Dr. Salas-Rushford then points to—what he deems—are instances in which ABIM allegedly breached the contract entered between the two because it failed to comply with its contractual duty of good faith pursuant to Puerto Rico contract law. *Id.* at pgs. 16-18.

In their Reply, the ABIM Parties reiterate that Dr. Salas-Rushford failed to identify the obligation that ABIM owed to him and that it allegedly breached. *See* Docket No. 219 at pg. 7. The ABIM Parties aver that the ABIM Policies & Procedures "state that ABIM reserved the right to suspend or revoke the certification of a diplomate who failed to maintain moral, ethical, or professional behavior satisfactory to ABIM, or engaged in misconduct that adversely affects professional integrity." *Id.* at n. 7. The ABIM Parties also find that Dr. Salas-Rushford's reliance on the implied covenant of good faith is improper. *Id.* at pgs. 7-8. They also ascertain that there was no contractual obligation for ABIM to "police" exam review courses nor was ABIM obligated to interview Dr. Salas-Rushford during its investigation of the Arora Review. *Id.* Lastly, they argue that Dr. Salas-Rushford cannot invoke a contractual claim in order to challenge ABIM's internal disciplinary process. *Id.* at pg. 9.

While Dr. Salas-Rushford did not cite to specific portions of his CTPC in his Opposition in support of his contention

that the recommended revocation and ultimate suspension of his board certification entailed a breach of contract, the Court can glean as much from a comprehensive reading of the CTPC. But even after affording Dr. Salas-Rushford the most benevolent reading possible of his CTPC, it remains unchanged that, both the October 2008 and August 2009 ABIM Policies & Procedures vested ABIM with the ability to suspend or revoke his board certification if he did not comply with certain standards and requirements as set forth therein. Specifically, the October 2008 and August 2009 ABIM Policies & Procedures provided, *inter alia,* that it could suspend or revoke board certification "at its discretion . . . if the diplomate was not qualified to receive the certificate at the time it was issued, even if the certificate was issued as a result of a mistake on the part of ABIM . . . [and] if the diplomate fails to maintain moral, ethical, or professional behavior satisfactory to ABIM, or engages in misconduct that adversely affects professional competence or integrity." *See* Docket No. 243-1, 243-2 and 243-4 at pg. 18. Regarding the diplomate's behavior

pertaining to the ABIM Board Exam, the ABIM Policies & Procedures for both October 2008 and August 2009 also warned that "ABIM utilizes data forensic techniques that use statistical analyses of test-response data to identify patterns of test fraud, including cheating and piracy." *Id.* Further, "[i]rregular or improper behavior that is observed, made apparent by data forensics, statistical analysis or uncovered by other means will be considered a subversion of the certification process and will constitute grounds for invalidation of a candidate's examination." *Id.*

A review[11] of the written decision after the conclusion of the third, and final stage of ABIM's three-stage appeals process ("Final Determination") that Dr. Salas-Rushford

---

[11] As noted in the Court's January 20, 2021 Opinion and Order, *see* Docket No. 241 at pg. 14, the Court may refer to documents incorporated by reference into the CTPC. *See also Kando v. Rhode Island State Bd. of Elections*, 880 F.3d 53, 58 (1st Cir. 2018) (quoting *R.G. Fin. Corp. v. Vergara-Nuñez*, 446 F.3d 178, 182 (1st Cir. 2006)) (explaining that, when examining a Rule 12(c) motion, such examination "may include facts drawn from documents 'fairly incorporated' in the pleadings and 'facts susceptible to judicial notice.'").

submitted himself to reveals that, his board certification was
ultimately suspended for seven years, as of December 7, 2012,
because "[t]he evidence of record—which Dr. Salas Rushford
refused to address with the Panel—demonstrate[d] that Dr.
Salas Rushford failed to maintain satisfactory ethical and
professional behavior, acted in a matter that adversely
affected his professional integrity, and subverted the
certification process." *See* Docket No. 216-4 at pg. 6. Given
that, pursuant to both the October 2008 and August 2009
ABIM Policies & Procedures, failure to abide by the
aforementioned postulates could lead to the suspension or
revocation of a diplomate's board certification, in order for a
breach of contract to materialize, Dr. Salas-Rushford was
tasked with pleading that he in fact did not contravene said
postulates, but that, even then, ABIM move forward with the
suspension of his board certification. The Court finds that Dr.
Salas-Rushford has not pleaded this.[12] In light of Dr. Salas-

---

[12] In his Opposition to the Motion in Compliance, Dr. Salas-Rushford
states that, the section titled "Irregular Behavior on Examinations" in the

Rushford's insufficient pleading, the Court's inquiry as to the breach of contract claim may come to an end. Nevertheless, we go a step further and address Dr. Salas-Rushford's argument that ABIM breached its Policies & Procedures because it breached its contractual duty of good faith, which as the Court reads this argument, the same is an attempt to challenge the three-stage appeals process that he underwent in order to contest the recommended revocation and ultimate suspension of his board certification.

"An implied covenant of good faith and fair dealing is present in all contracts governed by New Jersey law." *Emerson Corp. v. Orion Sales, Inc.*, 253 F.3d 159, 169-170 (3d Cir. 2001).

---

October 2008 Policies & Procedures could not be invoked in order to suspend or revoke his board certification because it only pertains to conduct that took place during the ABIM Board Exam itself. *See* Docket No. 244 at pg. 5. The Court finds this argument unavailing for the referenced section states that irregular or improper conduct which subverts the certification process which is uncovered at a later date could lead to the invalidation "of a candidate's examination." *See* Docket No. 243-1, 243-2. The Court notes that the August 2009 Policies & Procedures include a similar provision. *See* Docket No. 243-4 at pg. 18.

The covenant may be breached if one of the contracting parties "acts in bad faith or engages in some other form of inequitable conduct in the performance of a contractual obligation." *See Black Horse Lane Assoc. v. Dow Chem. Corp.*, 228 F.3d 275, 288 (3d Cir. 2000). But there are certain constraints and limitations that accompany this principle for "the implied duty of good faith and fair dealing does not operate to alter the clear terms of an agreement and may not be invoked to preclude a party from exercising its express rights under such an agreement." *Fleming Cos. V. Thriftway Medford Lakes, Inc.*, 913 F. Supp. 837, 846-847 (D.N.J. 1995). Likewise, "Puerto Rico law implies into contracts the covenant of good faith and fair dealing." *Punta Lima LLC v. Punta Lima Dev. Co. LLC*, Civil Nos. 19-1673; 19-1800, 2020 WL 710770 at *17 (D.P.R. Feb. 11, 2020). With this in mind, the Court finds that Dr. Salas-Rushford's reliance on the covenant of good faith in order to challenge the three-stage internal appeals process—notwithstanding whether the Court applies Puerto Rico or New Jersey contract law—also misses the mark.

Dr. Salas-Rushford posits that ABIM breached its duty of contractual good faith when it[13]: (1) did not warn him about the problems with the Arora Review course and did not remove the questions that had been allegedly compromised from the ABIM Board Exam that he ended up taking, *see* Docket No. 217 at pg. 16; Docket No. 33 ¶¶ 43-46; (2) did not seek or interview him when it began investigating the Arora exam review course[14], *see* Docket No. 217 at pg. 17; (3) improvised the entire appeals process that he faced, for it was not delineated in the October 2008 Policies & Procedures, *see* Docket No. 217 at pg. 18; Docket No. 33 ¶ 52; (4) failed to cite to specific rules or policies that he had allegedly violated, *see*

[13] The Court points out that none of these purported "obligations" appear in the ABIM Policies & Procedures (whether the October 2008 or August 2009 versions) nor in the description of the three-stage appeals process.

[14] The Court need not consider whether ABIM was obligated to interview Dr. Salas-Rushford once the investigation into the Arora review began. The Court's reason for doing so is simple; Dr. Salas-Rushford never pleaded this in his CTPC. Instead, he first brought this allegation to the Court's attention by way of his Opposition. Dr. Salas-Rushford's action constitutes an impermissible attempt to amend his pleadings via his Opposition.

Docket No. 217 at pg. 17; Docket No. 33 at ¶ 53; (5) denied access to the ABIM Board Exam questions so that he could compare them with those that he had allegedly collected and reproduced, *see* Docket No. 217 at pg. 17; Docket No. 33 at ¶ 54; and (6) did not provide him with a copy of the October 2008 ABIM Policies & Procedures, which he contends were the ones in effect at the time that he entered into the contractual relationship with ABIM, while ABIM instead relied on the August 2009 ABIM Policies & Procedures throughout the disciplinary process, *see* Docket No. 217 at pg. 18; Docket No. 33 ¶ 52.

While it is true that ABIM's three-stage appeals process was not referenced in the October 2008 or August 2009 ABIM Policies & Procedures, Dr. Salas-Rushford was notified as to the same. Specifically, a May 8, 2012 letter sent by Ms. Lynn O. Langdon on behalf of ABIM to Dr. Salas-Rushford informed him that he could partake in a three-stage appeals process if he wished to contest ABIM's recommendation to

revoke his board certification.[15] *See* Docket No. 216-1. Counsel for ABIM also sent Dr. Salas-Rushford an email outlining the three-stage appeals process. *See* Docket Nos. 243-3. More fundamentally, in his CTPC, Dr. Salas-Rushford pleaded that he submitted himself to the three-stage appeals process, *see* Docket No. 33 at ¶ 52.

Regarding Dr. Salas-Rushford's claim that he was not provided a copy of the October 2008 ABIM Policies & Procedures, as noted in the Court's discussion above, the sections of the August 2009 ABIM Policies & Procedures relied upon by ABIM to recommend the revocation of his board certification and ultimately proceed with the suspension of the same, were not materially different.[16]

---

[15] The letter stated that "[r]ecommended sanctions may be appealed through ABIM's three-stage internal appeal process and are not final while any appeal is pending." *See* Docket No. 216-1.

[16] The Court once again refers to the Final Determination noting that Counsel for Dr. Salas-Rushford "acknowledged at the hearing, [that] even the version of the Policies & Procedures that Dr. Salas Rushford contends applies provided that ABIM may suspend or revoke certification in the event a candidate or diplomate fails to maintain moral, ethical or

Moreover, the May 8, 2012 letter, *see* Docket No. 216-1, along with the Staff Credentials Committee's written decision, *see* Docket No. 216-3, and the Final Determination, *see* Docket No. 216-4, all pointed to the grounds for suspension or revocation as outlined in the August 2009 ABIM Policies & Procedures, which, as previously mentioned, did not materially differ from those outlined in the October 2008 ABIM Policies & Procedures.

Furthermore, regarding Dr. Salas-Rushford's claim that ABIM failed to remove the ABIM Exam protected questions which it identified, the Court fails to see how this would have affected Dr. Salas-Rushford's disciplinary proceedings, for the reported conduct that gave rise to the recommendation for revocation and ultimate suspension of his board certification,

---

professional behavior satisfactory to ABIM or engages in misconduct that adversely affects professional competence or integrity." *See* Docket No. 216-4 at pgs. 5-6. And that both Policies & Procedures "also put candidates on notice that ABIM seeks to identify patterns of test fraud, including cheating and piracy, and that irregular or improper behavior in connection with examinations is considered a subversion of the certification process." *Id.*

occurred prior to having taken the ABIM Board Exam. Lastly, in the CTPC, Dr. Salas-Rushford alleges that, ABIM acted in "total disregard of contractual good faith and due process" when it did not provide him the original ABIM Board Exam questions in order to defend himself from ABIM's allegations, given his belief that the material that he purportedly collected from his colleagues were "independently created reviews." *See* Docket No. 33 at ¶¶ 53-54. However, the Court highlights that, the final stage of the appeals process included a hearing during which Dr. Salas-Rushford was afforded the opportunity to express his stance regarding the recommended revocation and answer questions concerning his conduct, but he refused to address the allegations against

him head-on.[17] In sum, Dr. Salas-Rushford's reliance on the duty of good faith in order to challenge the three-stage appeals process that he faced also falls short. As such, the Motion for Judgment as to Dr. Salas-Rushford's First Claim for Relief is GRANTED.

### B. *General Tort Claim*

Moving on to Dr. Salas-Rushford's general tort claim, identified as the Third Claim for Relief in the CTPC, the Court is once again confronted with the choice of law question. In his CTPC, Dr. Salas-Rushford sets forth a general tort claim pursuant to Article 1802 of the Puerto Rico Civil Code ("Article 1802"). As discussed above, the ABIM Parties aver

---

[17] Specifically, the Court underscores that the Staff Credentials Committee's written decision noted that throughout his written submissions, Dr. Salas-Rushford "did not meaningfully address the evidence or conduct giving rise to the recommended sanction." *See* Docket No. 216-3 at pg. 4. And, in the written Final Determination, the Panel "express[ed] its disappointment that Dr. Salas Rushford chose not to answer its questions about his conduct and the evidence, and refused to confront the core issues presented by the evidence." *See* Docket No. 216-4 at pg. 6.

that New Jersey law applies.[18] New Jersey choice of law analysis for tort claims is similar to the two-prong test employed for contractual claims. The first step calls for the Court to determine whether an actual conflict exists between the laws in question. *See Curtiss-Wright Corp.,* 1 F.Supp.3d at 283. If there is no apparent conflict, then the Court's inquiry may end there. *Id.*

In order to set forth a negligence claim under New Jersey law, the following elements must be alleged: "(1) duty of care, (2) breach of that duty, (3) proximate cause, and (4) damages suffered[.]" *Houck v. Ferrari,* 57 F. Supp.3d 377, 387 (D.N.J. 2014). Likewise, under Puerto Rico law, a claim under Article 1802 states that "[a] person who by an act or omission causes damages to another through fault or negligence shall be obliged to repair the damage so done." *See* P.R. Laws Ann. tit.

---

[18] The Court's January 20, 2021 Opinion and Order includes a summary of the ABIM Parties' and Dr. Salas-Rushford's positions as to the choice of law matter pertaining to the general tort claims. *See* Docket No. 241 at pgs. 33-34.

31, § 5141. Specifically, the following must be established: (1) that a duty was owed by a defendant to the plaintiff; (2) that said duty was breached; (3) that damages materialized[19]; and (4) that there exists a causal nexus between the damages and the breach. *See Calderón Ortega v. U.S.,* 753 F.3d 250, 252 (1st Cir. 2014).

At first glance there is no apparent conflict between New Jersey and Puerto Rico law, for the elements to satisfy a claim under both track each other. However, a difference does exist with respect to the statute of limitations under each. A general tort action under Article 1802 falls under a one-year statute of limitation. *See Redondo Const. Co. v. Izquierdo,* 929 F. Supp.2d 1, 5 (D.P.R. 2012). Whereas, under New Jersey law, a two-year statute of limitation applies. *See Sterling v. New Jersey*

---

[19] In *Baum-Holland v. Hilton El Con Management, LLC,* the First Circuit noted that the "proof of damage" requirement is oftentimes referred to as the proof of "injury" requirement. *See* 964 F.3d 77, 95 n. 20 (1st Cir. 2020). The First Circuit went on to explain that "[t]he discrepancy is due to varying translations from Spanish of the word "daño" –derived from the Spanish phrase, "[e]l que . . . causa daño a otro," included in the Spanish version of P.R. Laws Ann. tit. 31, § 5141." *Id.*

*Aquarium, LLC,* Civil No. 1:18-390, 2020 WL 1074809 at * 4 (D.N.J. Mar. 6, 2020). Given this conflict, the Court turns to the second prong of the choice of law test.

The second prong of the New Jersey choice of law analysis instructs that, in negligence actions, "the local law of the state where the injury occurred [applies] . . . unless . . . some other state has a more significant relationship under the principles stated in § 6[20] to the occurrence, the thing and the parties, in which event the local law of the other state [applies]." *See Curtiss-Wright Corp.,* 1 F.Supp.3d at 285 (quoting Restatement (Second) Conflict of Laws § 147). In view of the allegations contained in the CTPC and given that the ABIM Parties have

---

[20] Under § 6, "[t]he factors that courts should consider in determining the applicable state law include: '(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant polices of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability[,] and uniformity of result, and (g) ease in the determination and application of the law to be applies.'" *Curtis-Wright Corp. v. Rodney Hunt Co., Inc.,* 1 F.Supp.3d 277, 285 (D.N.J. 2014) (quoting Restatement (Second) Conflict of Laws § 6).

failed to set a comprehensive argument stating otherwise, the Court understands that Puerto Rico law applies here.

Akin to the argument they articulated regarding the general tort claim identified as the Second Claim for Relief in the CTPC, the ABIM Parties sustain that they are unable to distinguish what exactly is being alleged by Dr. Salas-Rushford in his Third Claim for Relief. *See* Docket No. 216 at pgs. 20-22. The ABIM Parties, however, argue that, in any event, the Third Claim for Relief is in reality a due process claim cloaked as a general tort claim. *Id.* at pgs. 22-23. But given that ABIM and the ABIM Individuals are not state actors, the ABIM Parties reason that a due process claim is inapplicable here. *Id.* The Third Claim for Relief in the CTPC reads as follows:

> The damages suffered by Dr. Salas Rushford were also caused by the tortious, negligent, wrongful, arbitrary, malicious and incompetent investigation conducted [by] the ABIM Individuals which concluded incorrectly that Dr. Salas Rushford had supposedly committed misconduct and breached the Policies and

> Procedures for Certification and the Pledge of Honesty and Defendant and Third-Party Plaintiff, Dr. Salas Rushford, incorporates and re-alleges each and every allegation contained in the proceeding paragraphs.

*See* Docket No. 33 at ¶ 66.

Here, Dr. Salas-Rushford relies on boilerplate language referring to elements that characterize a general tort claim such as the one that he intends to advance. In his Opposition, however, Dr. Salas-Rushford attempts to flesh out his claim by pointing to allegations made in the CTPC which purportedly pave the way for a general tort claim under Article 1802. Similar to the arguments made in support of the First Claim for Relief in the CTPC, Dr. Salas-Rushford posits that the ABIM Individuals contravened Article 1802 and caused him damages when they did not hand over the original ABIM Board Exam questions after he requested them, failed to provide a copy of the applicable ABIM Policies and Procedures and erred in concluding that he had breached the ABIM Policies and Procedures and the Pledge of Honesty.

*See* Docket No. 217 at pgs. 25-27. Notwithstanding Dr. Salas-Rushford's attempt to clarify the allegations in support of this general tort claim—an attempt which the Court recognizes was still difficult to follow and discern since the general tort claims brought under the Second and Third Claims for Relief were discussed in unison throughout the Opposition—his claim is deficient for it fails to establish the duty that was owed to him by the ABIM Individuals and which they reportedly breached.

As read by the Court, Dr. Salas-Rushford's allegations are based on the ABIM Individuals' purported omission to turn over certain documents during the three-stage appeals process.[21] *See* Docket No. 217 at pgs. 25-27. Meaning that, in

---

[21] Indeed, the general tort claim as articulated at Docket No. 33 at ¶ 66, conveys Dr. Salas-Rushford's sentiment that the ABIM Individuals erred in concluding that he breached the ABIM Policies & Procedures and the Pledge of Honesty. However, this is a conclusory statement, which lacks specific facts explaining how the ABIM Individuals erred in determining that his ABIM board certification should be suspended. Moreover, as discussed throughout this Opinion and Order, the ABIM Panel, in its Final Determination, did not invoke the Pledge of Honesty in support of its decision to suspend Dr. Salas-Rushford's board certification.

order for the ABIM Individuals to have had an obligation to turn over said documents, they must have had a duty to act in such a manner. *See Barreiro López v. Universal Ins. Co.*, 98 F.Supp.3d 349, 354 (D.P.R. 2015). The aforementioned duty "'arises in one of three ways: (1) by statute, regulation, ordinance, bylaw or contract; (2) as the result of a special relationship between the parties that has arisen through custom; or (3) as the result of a traditionally recognized duty of care particular to the situation.'" *Id.* (quoting *De Jesús-Adorno v. Browning Ferris Indus.*, 160 F.3d 839, 842 (1st Cir. 1998)). Accordingly, Dr. Salas-Rushford must have pleaded that the ABIM Individuals had a duty to act in such a manner and must have identified where that duty to act stemmed from. Here, Dr. Salas-Rushford has not done so.[22]

---

[22] In his Opposition, in what appears to be the discussion regarding the general tort claim identified as the Third Claim for Relief in the CTPC, Dr. Salas-Rushford cited to various cases pertaining to abuse of power and the withholding of potentially exculpatory evidence. *See* Docket No. 217 at pg. 26. Specifically, he cited to *Mississippi Public Employees Retirement System v. Boston Scientific Corp.*, 649 F.3d 5 (1st Cir. 2011); *Torres Ramirez v. Bermúdez García*, 898 F.2d 224, 227 (1st Cir. 1990) and *Germany v. Vance*, 868

Instead, what the Court can gauge from the pleadings and the arguments articulated by Dr. Salas-Rushford is that, he is essentially mounting a procedural challenge against ABIM's

---

F.2d 9, 18 n. 10 (1st Cir. 1989). However, these cases can be distinguished from the instant case as the first case analyzed the concept of "recklessness" within the scope of the elements necessary to establish securities fraud.  And the remaining two cases were premised on constitutional violations and involved state actors. Moreover, to the extent that Dr. Salas-Rushford may have attempted to advance a malicious prosecution tort claim (which is actionable under Article 1802), or an abuse of process claim, the same would also be misplaced here in light of the required elements necessary to set forth such claims given that they were not pleaded by Dr. Salas-Rushford in his CTPC. *See McMillan v. Rodríguez-Negrón,* Civil No. 19-1639, 2020 WL 7422317, at * 5 (D.P.R. Dec. 18, 2020) (stating that, in the civil context, generally, Puerto Rico law does not provide for a civil action for damages due to a civil suit, given that in such instances, the remedy for an "ill-intentioned and frivolous suit litigation is attorney's fees."); *Dish Network LLC v. Llinas,* 310 F.Supp.3d 310, 311-12 (D.P.R. 2018) (noting that the following two elements must be met in order to advance an abuse of process claim under Puerto Rico law: (1) bad motive; and (2) that the legal process was used for an "improper, collateral objective."); *Besosa-Noceda v. Rivera-Torres,* Civil No. 15-1558, 2016 WL 4398515 at *4 (D.P.R. Aug. 15, 2016) (explaining that "[a] malicious prosecution claim is brough under the auspices of Article 1802 of the Puerto Rico Civil Code and requires that plaintiff aver and prove: (1) that he or she has been the subject of a criminal complaint filed by the defendant, (2) that the criminal case ended favorably for plaintiff, (3) that the case was instigated maliciously and without probable cause, and (4) that plaintiff suffered damages as a result.").

three-stage appeals process. Simply put, Dr. Salas-Rushford's claim appears to be a due process challenge. But as both Dr. Salas-Rushford and the ABIM Parties affirm, ABIM and the ABIM Individuals are not state-actors[23] and therefore, due process guarantees afforded by virtue of the Fourteenth Amendment of the United States Constitution are inapplicable here.[24] Moreover, the record shows that Dr. Salas-Rushford was afforded a hearing as part of the three-stage appeals process, during which he declined to answer the ABIM Panel's questions regarding the allegations set forth against him. Further, the communications sent by ABIM to Dr. Salas-Rushford, informed him of the grounds for suspension. Even though ABIM appears to have relied on the August 2009 ABIM Policies & Procedures when doing so, as

---

[23] It is a bedrock principle that "the Fourteenth Amendment applies only to state action performed by 'a person who may fairly be said to be a state actor.'" *See Jarvis v. Village Gun Shop, Inc.*, 805 F.3d 1, 8 (1st Cir. 2015) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

[24] The Due Process clause contained in the Fourteenth Amendment states in pertinent part that: "nor shall any State deprive any person of life, liberty, or property without due process of law." U.S. CONST. amend. XIV, § 1.

explained throughout this Opinion and Order, the pertinent sections—those discussing the potential suspension or revocation of his board certification—were not materially different vis-à-vis those included in the October 2008 ABIM Policies & Procedures. In consequence, Dr. Salas-Rushford was notified as to the grounds of the potential suspension or revocation of his board certification. And, while initial communications from ABIM to Dr. Salas-Rushford mentioned that he had acted in contravention to the Pledge of Honesty, ultimately, the Final Determination did not invoke the Pledge of Honesty when supporting its decision to move forward with the suspension of his board certification. Accordingly, the Motion for Judgment as to Dr. Salas-Rushford's Third Claim for Relief is GRANTED.

## C. *Request to Amend the CTPC*

The Court now turns to its last order of business: Dr. Salas-Rushford's request for leave to amend his CTPC. *See* Docket Nos. 217 at pgs. 31-32 and 244 at pg. 8. A perusal of the record shows that, on August 2, 2016, prior to the transfer of this case

to this Court, Dr. Salas-Rushford moved the District Court of New Jersey for leave to amend his CTPC. *See* Docket No. 109. On that occasion, Dr. Salas-Rushford stated that he intended to amend his CTPC in order to remove placeholders which had been used for insurance companies "A, B and C" because ABIM had produced copies of insurance policies that identified the insurance companies by name. Docket No. 109-1 at pg. 3. Dr. Salas-Rushford also expressed his intention to amend portions of the CTPC in accordance with the evidence produced during the discovery. *Id.* at pg. 4. The request to amend was denied by the District Court of New Jersey because Dr. Salas-Rushford failed to show "good cause" as to why the cut-off date to add or amend set forth in the Pretrial Scheduling Order at Docket No. 19—which expired on July 30, 2015—should have been extended. *See* Docket No. 133 at pgs. 2-3.

Dr. Salas-Rushford's requests for leave to amend at Docket Nos. 217 and 244, must also be denied. Here, it is not apparent from the record that Dr. Salas-Rushford's is entitled

to amend his CTPC as a matter of course and he has not raised an argument stating that such is the case. [25] Once the option to amend as a matter of course is off the table, a party may amend with the opposing party's consent or with prior leave of the Court. *See* Fed. R. Civ. P. 15(a)(2). And even though Federal Rule of Civil Procedure 15(a)(2) ("Rule 15(a)(2)") affords the Court considerable discretion to "give leave [to amend] when justice so requires," the Court does not find that the interest of justice would be met if such leave is granted here. *Id.*

The First Circuit has made it clear that a district court may deny a request for leave to amend pursuant to Rule 15(a)(2) if the same is characterized by "undue delay, bad faith, futility, [or] the absence of due diligence on the movant's part[.]" *See*

---

[25] Pursuant to Federal Rule of Civil Procedure 15(a)(1), a party may amend a pleading as matter of course 21 days after serving the same, or "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." *See* Fed. R. Civ. P. 15(a)(1)(A)-(B).

*Palmer v. Champion Mortgage,* 465 F.3d 24, 30 (1st Cir. 2006). While the Court is more than aware of the extended nature of this case, we still find that Dr. Salas-Rushford's request is not warranted. Other than including a generic assertion that leave to amend is requested in order to "address any defect[,]"*see* Docket Nos. 217 at pgs. 31-32 and 244 at pg. 8, Dr. Salas-Rushford does not articulate why a request to amend the CTPC is being advanced at this juncture.[26]

Moreover, it has not gone unnoticed to this Court that Dr. Salas-Rushford's request to amend runs contrary to the objections that he raised to the scheduling order set forth at Docket No. 191. *See* Docket No. 198. There, Dr. Salas-Rushford vehemently argued that the instant case should not be further delayed and that certain deadlines—including the deadline to amend pleadings or add parties—were no longer necessary.

---

[26] The Court notes that the request to amend comes more than five years after the filing of the CTPC, *see* Docket No. 33, and approximately a little over four years after a prior attempt to amend the same was made, *see* Docket No. 109.

*Id.* It appears that Dr. Salas-Rushford has now changed his tune. Nevertheless, this unsubstantiated change in tune is not enough for this Court to grant his request to amend the CTPC.

The Court acknowledges that, Dr. Salas-Rushford's request could have potentially been analyzed pursuant to the more stringent "good cause" standard under Federal Rule of Civil Procedure 16(b) ("Rule 16(b)"). *See* Fed. R. Civ. P. 16(b). This standard comes into play after the entry of a scheduling order setting a deadline to amend the pleadings. *See U.S. ex rel. D'Agostino v. EV3, Inc.*, 802 F. 3d 188, 192 (1st Cir. 2015). Under this standard, the deadline to amend the pleadings delineated in a scheduling order "may be modified only upon a showing of 'good cause.'" *Id.* (quoting Fed. R. Civ. P. 16(b)(4)).

Here, a scheduling order was entered on November 7, 2019, which set a deadline for December 3, 2019, for the parties to amend pleadings or add parties. *See* Docket No. 191 at pg. 2. As discussed, Dr. Salas-Rushford filed a motion whereby he objected to some of the deadlines set forth in the

scheduling order—including the December 3, 2019 deadline to amend pleadings—for he deemed that the same were unnecessary. *See* Docket No. 198. A scheduling conference followed on January 31, 2020, in order to discuss, *inter alia,* the scheduling order at Docket No. 191. *See* Docket No. 220. But the Minute for that scheduling conference does not reflect whether the December 3, 2019 deadline to amend pleadings or add parties was extended or considered to have expired. Shortly after the January 31, 2020 scheduling conference, this case was assigned to the undersigned. *See* Docket No. 233.

Nevertheless, in view of this context and given that no further scheduling conferences took place after the January 31, 2020 conference, here, the Court analyzed Dr. Salas-Rushford's request to amend his CTPC under the scope of Federal Rule of Civil Procedure 15(a)(2). In any event, the Court notes that Dr. Salas-Rushford's request to amend in order to "address any defect[,]" *see* Docket Nos. 217 at pgs. 31-32 and 244 at pg. 8, does not satisfy Rule 16(b)'s stringent

"good cause" requirement. Accordingly, the request for leave to amend the CTPC is hereby DENIED.

## II. Conclusion

In light of the above, the Court hereby **GRANTS** the ABIM Parties' Motion for Judgment at Docket No. 216, as to Dr. Salas-Rushford's breach of contract claim and general tort claim related to the same.[27] Accordingly, both claims are **DISMISSED WITH PREJUDICE.** The Court also **DENIES** Dr. Salas-Rushford's request to amend the CTPC.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 9th day of July, 2021.

S/ SILVIA CARREÑO-COLL
UNITED STATES DISTRICT COURT JUDGE

---

[27] The same were identified as the First and Third Claims for Relief in the CTPC.